WILLIAM BAKER and GEORGE NATHENSON, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24383.)

Court of Claims, July 31, 1941.

*Levi & Samuel Ginsburg* [*Levi Ginsburg* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*Gerald J. Carey, Assistant Attorney-General*, of counsel], for the defendant.

*Sayles, Flannery & Evans* [*Henry H. Sayles* of counsel], for the Erie Railroad Company.

RYAN, J. This claim arises out of the Elmira Grade Crossing Elimination. Claimants demand damages according to paragraph 11 of their claim in four particulars, viz.:

(1) For value of land appropriated and taken. This item was dismissed at the close of the claimants' case because no land was appropriated or taken.

(2) For damages to real property of claimants not so appropriated. We make an allowance on this item in the amount of $1,500 for obstruction to and interference with the easements of light, air and access to claimants' property over and above all benefits resulting from the elimination of the railroad crossing at grade. (*Caldwell & Ward Brass Co.* v. *State of New York,* 161 Misc. 147; affd., 251 App. Div. 781; affd., 277 N. Y. 547; *Champion Oil Co., Inc.,* v. *State of New York,* 161 Misc. 143; 251 App. Div. 781; *Coffey* v. *State of New York,* Claim No. 24384, decided Jan. 24, 1941, unreported.)

We make an allowance of an additional sum of $250 under this item for damages to claimants' property resulting from construction operations.

(3) For damage to claimants' property on account of change of grade. Formerly these same claimants sought to recover damages from the city of Elmira on the same facts which are presented here. Relief was denied them. (*Matter of Baker* v. *Mayor, etc., of City of Elmira,* 156 Misc. 243.) At that time they asserted that the Grade Crossing Elimination Act did not provide for the payment of their alleged damages. But the court, PERSONIUS, J., pointed out that any remuneration to which they were entitled

and the method of obtaining it were provided for by that act, if provided at all, and if it was there omitted such omission did not cast the burden on the city of Elmira. The decision was not appealed. Since its promulgation (July 16, 1935) much has been written on the subject of liability of the State of New York under the Grade Crossing Elimination Acts. Two later pronouncements are the affirmance by the Court of Appeals of a judgment awarding damages for a change of grade in the city of New York (*Mirro* v. *State of New York*, 285 N. Y. 678) and the affirmance by the Fourth Department of a judgment awarding damages for a change of grade in the city of Syracuse. (*Solkat Realty Corp.* v. *State of New York*, 262 App. Div. 944.) The force of these two decisions compels us to revise our views respecting the provision of the Elmira City Charter as expressed in *West 158th Street Garage Corp.* v. *State of New York* (168 Misc. 822)* wherein we said: " Far different indeed is the language of the Greater New York Charter, section 951." In effect the previous interpretation of the Elmira City Charter is now overruled. We believe that, like the language of the New York City Charter, it must now be interpreted and read with the provisions of the applicable Grade Crossing Elimination Act to mean that it has created a liability for change of grade which the State has assumed.

Adopting the *Mirro* and *Solkat* decisions (*supra*), we are concurrently holding the State liable for a change of grade in the city of Binghamton. (*Cook* v. *State of New York*, 176 Misc. 947.) To this municipality the Second Class Cities Law applies. Section 99 thereof recites: " The grade of a street heretofore or hereafter legally established shall not be changed except by *direction* of the common council." (Italics mine.) While this is less specific than the Elmira Charter provision it does call for action by the common council and we have seen that this becomes unnecessary when the State steps in. (*Solkat* v. *State of New York, supra.*) Moreover, the word " alter," which appears in the Elmira City Charter, should be construed so as to include a change of grade. (*Waddell* v. *Mayor, etc., of City of New York*, 8 Barb. 95.) On this item of their claim, therefore, we believe claimants are entitled to recover. We allow them the sum of $1,500, which it cost them to remodel their building to meet the new street grade. We find no other damage sustained by them in this respect.

(4) For damages to claimants for the temporary appropriation of claimants' property, and rights and easements in connection

---

* Although our decision granting an order to reopen the case was reversed on the ground that we did not have power to set aside the judgment (256 App. Div. 401), the principle of liability expressed has been vindicated by the affirmance in the *Mirro* case.

therewith, as the result of the construction of the overhead crossing and the construction and maintenance of temporary tracks.

Under this item claimants demand the sum of $1,500 for diminution in rents received by them from their tenant for the year 1934, claiming that this resulted directly from the construction work. It appears that during 1933 and 1934 the claimants' premises were occupied by one Green who had agreed to pay a yearly rental of the sum of $7,500, and, in addition thereto, seven per cent of the sum by which the gross sales made upon the premises during each of these years exceeded the sum of $107,000. Claimants received from said tenant for 1933 the said sum of $7,500, and, in addition thereto, the sum of $1,500, representing seven per cent of the excess gross sales. For the year 1934 claimants received the agreed sum of $7,500, but in that year the gross sales made upon the premises did not exceed the sum of $107,000 and claimants received no sum of money representing a percentage of the gross sales. Claimants rely upon these facts as sustaining their measure of damages for the year 1934. We think that they are insufficient and that upon the record before us no finding can be made as to what damages claimants sustained, if any, during that year. In our opinion claimants would be entitled to recover damages for the temporary closing of the street if they proved what these damages were. In this regard we follow our decision in a previous Elmira claim. (*Coffey* v. *State of New York, supra*.) But whether the failure of the retail business conducted by claimants' tenant to return a gross in excess of $107,000 for the year 1934 was due to the obstruction of claimants' premises by the work attendant upon the grade crossing elimination or whether it was due to the loss of good will on the part of the tenant or to his incapacity in business, or to his lack of attention thereto, is purely speculative. Perhaps another in the same business at the same location might have produced in 1934 gross sales in excess of $107,000, far greater than that which this particular man produced in the year 1933. Who can say?

The Attorney-General argues that the agreement by the tenant to pay the percentage of the excess gross was not an agreement to pay rent but an agreement to share in profits and that loss of profits is not a proper item of damages. In actions of tort or breach of contract, if it can be shown that the loss of profits directly flows from the tort or the breach, it is proper to allow damages based thereon even though the amount thereof cannot be clearly or definitely stated. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Lakeside Paper Co.* v. *State of New York*, 45 App. Div. 112; *Paduano* v. *State of New York*, 203 id. 503.) However, it

appears that this is not the rule where the State takes land for public use (*Adamo* v. *State of New York*, 235 App. Div. 12), unless the Legislature authorizes recovery for loss of profits or for damages to good will of a business, which it may do. (*Banner Milling Co.* v. *State of New York*, 240 N. Y. 533, 541.)

Here, we dismiss this item of the claim upon the ground that it is entirely speculative and that there has been no proper proof of damages, if any, sustained.

Decision should be entered in conformity with the foregoing opinion.

BARRETT, P. J., concurs.